JUDGE FRANK MONTALVC

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
El PASO DIVISION

FILED

2021 AUG -9 PM 1:48

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ M ) _____
DEPUTY

| | |
|---|---|
| **BRANDON CALLIER,** §<br>§<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**EBF PARTNERS, LLC, d/b/a EVEREST** §<br>**BUSINESS FUNDING,** a Delaware Limited §<br>Liability Company, **SCOTT CROCKETT** and §<br>**JOHN DOES 1-4** §<br>**Defendants.** §<br>§ | **EP21CV0180** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.  The Plaintiff is BRANDON CALLIER, a natural person and resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County.

2.  Defendant EBF PARTNERS, LLC (EBF) d/b/a Everest Business Funding, is a Delaware limited liability company with a principal address of 8200 NW 52 TERR, Suite 200, Doral, Florida 33166 and can be served via registered agent National Registered Agents Inc., 1209 Orange Street. Wilmington, Delaware 19801.

3.  Defendant SCOTT CROCKETT is a current Officer of EBF Partners, LLC and can be served at 8200 NW 52 TERR, Suite 200, Doracl, Florida 33166.

4.  Defendant JOHN DOE 1 is business MEG CONSULTING LLC d/b/a LOGIC ADVANCE GROUP

5.  Defendant JOHN DOE 2 is the highest ranking officer of Meg Consulting, LLC.

1

## JURISDICTION AND VENUE

6. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's
   TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v.
   Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject
   matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code
   305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants'
   telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek
   money damages, so it is unlikely to predominate over the TCPA claims.

7. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant
   because they have repeatedly placed calls to Texas residents, and derive revenue from Texas
   residents, and they sell goods and services to Texas residents, including the Plaintiff.

8. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a
   substantial part of the events giving rise to the claims—the calls and sale of goods and
   services directed at Texas residents, including the Plaintiff—occurred in this District and
   because the Plaintiff resides in this District. Residing in the Western District of Texas when
   he received a substantial if not every single call from the Defendants that are the subject
   matter of this lawsuit.

9. This Court has venue over the defendants because the calls at issue were sent by or on behalf
   of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION
## ACT OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing
    equipment that could target millions of consumers *en masse*. Congress found that these calls
    were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

4

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code 305.053

23. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

24. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

25. The Plaintiff has received at least 12 calls over sixty days to his cell phone without consent and not related to an emergency purpose, soliciting business funding products and services of Defendant EBF.

26. The Plaintiff did not want or need business funding. However, in order to cease harassment from the anonymous robocallers, such as the defendants, Plaintiff told the representative he needed business funding for the sole purpose of identifying who was calling and/or the company who was responsible for calling.

27. On November 25, 2020 Plaintiff received an automated call from phone number 551-213-5331.

28. Plaintiff answered the phone and heard an audible "beep" before he was connected to a third-party representative who identified himself as "Kevin Davis" and asked to speak to "the business owner." Plaintiff was then asked qualifying questions about his business revenues, debts and credit score.

29. The third-party representative asked for the Plaintiff's email address and sent the Plaintiff an email asking the Plaintiff to submit an application via Docusign.

30. Kevin Davis' email indicated he worked for, or was an agent of, Logic Advance Group with a phone number of 347-807-0985.

31. Plaintiff conducted a search of Logic Advance Group and was not able to locate the company.

32. Plaintiff conducted a search of phone number 347-807-0985 and was unable to determine to whom the number belonged.

33. The Plaintiff searched his call log and saw he had received at least 12 calls from 551-213-5331.

34. Plaintiff called 551-213-5331 multiple times. It is not a working telephone number.

35. Plaintiff asked business owner Justin Johnson (Johnson) to apply for a loan so he could find out who was harassing him with repeated phone calls and requests for personal information.

36. On November 25, 2020 at 12:48 PM Plaintiff emailed Kevin Davis and informed him Justin Johnson wanted business funding.

37. Johnson did not need or want business funding but was assisting the Plaintiff in determining who was behind the repeated robocalls.

6

38. Johnson applied for and received approval for a loan from Defendant EBF (Exhibit A).

39. Johnson provided Plaintiff a copy of the loan paperwork and discovered it was Defendant EBF behind the illegal robocalls.

40. Each time Plaintiff answered the phone there was a 10 second delay before being connected to a live representative.

41. Plaintiff received multiple calls from spoofed caller ID's initiated using an automated telephone dialing system. The calls were made by a third-party telemarketer on behalf of Defendant EBF. The calls generally had a delay of 5-10 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS. The Plaintiff received at least 12 calls.

42. Each and every call was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

43. Plaintiff received the following calls from the Defendants (Table A).

| Call Phone Number | Name on Caller ID | Date | Time |
|---|---|---|---|
| 551-213-5331 | UNKNOWN NAME | 11/25/2020 | 9:08 AM |
| 551-213-5331 | UNKNOWN NAME | 11/23/2020 | 7:40 AM |
| 551-213-5331 | UNKNOWN NAME | 11/20/2020 | 10:34 AM |
| 551-213-5331 | UNKNOWN NAME | 11/20/2020 | 8:09 AM |
| 551-213-5331 | UNKNOWN NAME | 11/20/2020 | 7:25 AM |
| 551-213-5331 | UNKNOWN NAME | 11/9/2020 | 10:44 AM |
| 551-213-5331 | UNKNOWN NAME | 11/6/2020 | 10:07 AM |
| 551-213-5331 | UNKNOWN NAME | 10/9/2020 | 12:37 PM |
| 551-213-5331 | UNKNOWN NAME | 10/5/2020 | 9:03 AM |
| 551-213-5331 | UNKNOWN NAME | 9/29/2020 | 12:25 PM |
| 551-213-5331 | UNKNOWN NAME | 9/28/2020 | 1:19 PM |
| 551-213-5331 | UNKNOWN NAME | 9/11/2020 | 12:21 PM |

44. Each and every call failed to identify the telemarketers and parties they were calling on

behalf of.

45. Defendant Crockett is aware of and authorized the robocalling campaign and allows
    Independent Sales Organization (ISOs) to violate the TCPA because it increases revenues to
    EBF Partners, LLC. Defendant Crockett authorized and ratified the contracts and
    compensation to the ISOs who solicit on behalf Defendant EBF.

46. ISOs solicit on behalf of Defendant EBF for compensation and submit applications directly
    with Defendant EBF for processing and approval.

47. Defendant EBF and Defendant Crockett are aware of the robocalling campaign and support
    the robocalling campaign because it increases revenues for Defendant EBF.

48. Defendant EBF offers sales incentives to ISOs in order to encourage ISOs to target and
    solicit consumers on behalf of Defendant EBF. The ISOs are acting with actual and apparent
    authority on behalf of Defendant EBF.

49. Mr. Callier has a limited data plan. Incoming text messages chip away at his monthly
    allotment.

50. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming
    telemarketing calls consumed part of this capacity.

51. No emergency necessitated the calls

52. Each call was sent by an ATDS.

53. None of the defendants ever sent Mr. Callier any do-not-call policy.

54. On information and belief, the defendant did not have a written do-not-call policy while it
    was sending Mr. Callier the unsolicited calls

55. On information and belief, the defendant did not train its agents who engaged in
    telemarketing on the existence and use of any do-not-call list.

8

### Vicarious Liability of the Sellers

56. These parties are vicariously liable under the theories of actual authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

57. Defendant EBF is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain the Plaintiff as a client and quoted the Plaintiff their services in obtaining business funding.

58. The approved loan paperwork shows that the beneficial party who was gaining customers was Defendant EBF.

59. Defendant EBF has hired a team of ISOs to solicit their business funding products on their behalf. Defendant EBF is aware of their cold calling campaign that ignores the National Do Not Call registry.  Defendant EBF allows the robocalling solicitations because it benefits Defendant EBF.

60. Defendant EBF authorized third-party telemarketers to generate prospective customers. Defendant EBF paid third-party telemarketers to promote its products and services. Defendant EBF's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that the third-party telemarketers were the telemarketing department of Defendant EBF.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

61. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the

purpose of the TCPA.

62. Every entity in the application for "business funding" should be deemed a beneficiary of the calls and held liable for damages under the TCPA under vicarious liability. Sellers are in the best position to monitor and police third party telemarketer's compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

63. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

64. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

65. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

66. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

67. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

• Reduced Device Storage space and reduced data plan usage

• Invasion of privacy

• Reduced enjoyment and usage of my cell phone

• Reduced battery usage

• Anger and Frustration

## The Plaintiff's cell phone is a residential number

68. The calls were to the Plaintiff's cellular phone 915-383-4604, which is the Plaintiff's
personal cell phone that he uses for personal, family, and household use. The Plaintiff
maintains no landline phones at his residence and has not done so for at least 10 years and
primarily relies on cellular phones to communicate with friends and family. The Plaintiff also
uses his cell phone for navigation purposes, sending and receiving emails, timing food when
cooking, and sending and receiving text messages. The Plaintiff further has his cell phone
registered in his personal name, pays the cell phone from his personal accounts, and the
phone is not primarily used for any business purpose.

## Violations of the Texas Business and Commerce Code 305.053

69. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by
placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the
defendants violated Texas law by placing calls with a pre-recorded message to a cell phone
which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC
227(e).

70. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC
227(e) which in turn violates the Texas statute.

## FIRST CLAIM FOR RELIEF

## (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

## (Against All Defendants)

1.      Mr. Callier realleges and incorporates by reference each and every allegation set
forth in the preceding paragraphs.

11

2.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3.     Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.     Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.     Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.     Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.     a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

        b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

        c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10.      Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

11.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

13

USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.     Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14.     Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 12 calls.

E.     An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.     An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.     An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

H.     Such further relief as the Court deems necessary, just, and proper.

August 9, 2021,                                    Respectfully Submitted,

Brandon Callier
Pro-se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604

# Exhibit A



# AAAAUEL7PK          AAAAUEL7PK

---

## Cover Page for Faxing Documents to your DocuSign Envelope

1. Write the number of pages on the line below.
2. Fax the document and cover page to the appropriate number below:

| | |
|---|---|
| U.S. and Canada: | +1 888 258 5388, +1 206 452 7455 |
| London: | +44 330 822 0429 |
| Singapore: | +65 3158 6882 |
| Australia: | +61 280 155 634 |

---

| | |
|---|---|
| From: | JUSTIN LANE JOHNSON |
| Envelope Subject: | .Please sign Contract for J&J E-LITE ENTERPRISES, LLC - 11/30/2020 - ISO: MEG CONSULTING INC |
| Attachments to Fax: | |
| Envelope ID: | e5535be2-6023-43d4-a1cb-58b8d12416d7 |
| Sender Account Name: | Everest Business Funding |
| Number of Pages:<br>(Including cover page) | _____ |

DocuSign Customer Support: https://support.docusign.com

Note:
Fax transmissions take approximately one minute per page faxed.
This page may only be used once. If you would like to fax again, you must print a new cover page.

# AAAAUEL7PK          AAAAUEL7PK



## PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT

This Payment Rights Purchase and Sale Agreement ("Agreement") dated <u>11/30/2020</u>, is made by and between EBF Partners, LLC d/b/a Everest Business Funding ("Purchaser"), the business identified below ("Seller"), and the owners of the Seller identified below (each a "Guarantor").

### SELLER'S INFORMATION

| Legal Business Name | J&J E-LITE ENTERPRISES, LLC | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **D/B/A** | | | | | | | | | |
| **Type of Business Entity** | **Corp.** | | **Limited Liability Company** | ✔ | **Partnership** | | **Limited Partnership** | | |
| | **Limited Liability Partnership** | | | | **Sole Proprietorship** | | **Other** | | |
| **Physical Address** | 1320 MONTICELLO DR | | | | | | | | |
| **City** | BURLESON | | **State** | | TX | **Zip** | | 76028 | |
| **Mailing Address** | 1320 MONTICELLO DR | | | | | | | | |
| **City** | BURLESON | | **State** | | TX | **Zip** | | 76028 | |
| **Contact Name** | JUSTIN LANE JOHNSON | | | | | **Position** | | | |
| **Business Phone** | | | | | **Cell Phone** | | | | |
| **Email** | jjohnson.eliteenterprises@gmail.com | | | | **Website** | | | | |
| **Date Business Started** | 07/2018 | | | | **Federal Tax Id** | | 85-1908746 | | |
| **Monthly Avg Sales** | $6,273.50 | | | | **Annual Sales** | | $75,282.00 | | |

### GUARANTOR'S INFORMATION

| Name: justin lane johnson | Address: 1320 MONTICELLO DR, BURLESON, Texas 76028 |
|---|---|
| Name: | Address: |

### OFFER TO SELL AND PURCHASE PAYMENT RIGHTS

Seller hereby sells, assigns and transfers to Purchaser, without recourse, upon payment of the Purchase Price, the Purchased Amount of Future Receipts by delivering to Purchaser the Specified Percentage of the proceeds of each future sale by Seller. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Credit Card") or other form of monetary payment in the ordinary course of Seller's business. BASED UPON SELLER'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, SELLER IS CONFIDENT THAT THE PURCHASE PRICE PAID BY PURCHASER IN EXCHANGE FOR THE PURCHASED AMOUNT OF FUTURE RECEIPTS WILL BE USED IN A MANNER THAT WILL BENEFIT SELLER'S CURRENT AND FUTURE BUSINESS OPERATIONS.

| Purchase Price | $11,000.00 | Purchased Amount | $16,500.00 | Daily Payment | $187.50 | Specified Percentage | 70% |
|---|---|---|---|---|---|---|---|
| **Daily Payment = (Monthly Average Sales X Specified Percentage ) / Average Weekdays in a Calendar Month** | | | | | | | |

| Itemization of Fees Deducted from Purchase Price | | Amount Remitted to Seller: |
|---|---|---|
| | | $10,275.00 |
| Origination Fee: | $400.00 | |
| Funding Fee: | $50.00 | The Amount Remitted to Seller may include payments made on Seller's behalf to satisfy prior obligations of Seller to EBF Partners, LLC d/b/a Everest Business Funding or third parties. |
| ACH/Lockbox/CC Split Processing Fee: | $275.00 | |
| Payoff Existing Balance | $0.00 | |
| Total: | ($725.00) | |

HC# 4822-9598-3643

ISO#4432/AR#1201857/11302020          V-4.0          Initial Here _____

Seller shall (1) deposit all Future Receipts into only one bank account, which must be acceptable to and pre-approved by Purchaser (the "Account") and (2) instruct Seller's Credit Card processor, which processor must be acceptable to and pre-approved by Purchaser (the "Processor") who shall serve as Seller's sole Credit Card processor, to deposit all Credit Card receipts of Seller into the Account. Purchaser will debit the Daily Payment from the Account each Weekday (Monday – Friday). Seller authorizes Purchaser to initiate electronic checks or ACH debits from the Account equal to the Daily Payment each business day and will provide Purchaser with all required account information. Seller will be responsible for any fees incurred by Purchaser resulting from a rejected electronic check or ACH debit attempt. Purchaser is not responsible for any overdrafts or rejected transactions that may result from Purchaser's debiting any amount authorized under the terms of this Agreement.

**Purchaser Acknowledgement.** There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Purchaser is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to receive the benefit of its bargain.

**Seller's Right to Reconciliation.** The Daily Payment amount is intended to represent the Specified Percentage of Seller's Future Receipts. Seller may request that Purchaser reconcile Seller's actual receipts by either crediting or debiting the difference back to or from the Account so that the amount Purchaser debited in the most recent calendar month equaled the Specified Percentage of Future Receipts that Seller collected in that calendar month. Any reconciliation request must be: (1) in writing; (2) include a copy of Seller's bank statement for the calendar month at issue; and (3) be sent to Everest Business Funding at 5 West 37th Street, Suite 1100, New York NY 10018 within 30 days after the last day of the calendar month at issue. It is solely the Seller's responsibility to send a complete bank statement. Failure to send a written reconciliation request within 30 days after the last day of the calendar month at issue forfeits that month's reconciliation.

**Fees.** A list of all fees applicable under this Agreement is contained in Appendix A.

**THE "PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT TERMS AND CONDITIONS" AND THE "PERFORMANCE GUARANTY" ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT.**

**SELLER:** J&J E-LITE ENTERPRISES, LLC

| BY: (PRINT NAME & TITLE BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS SELLER |
|---|---|---|
| Justin Lane Johnson | | |
| BY: (PRINT NAME & TITLE BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS SELLER |
| | | |

**OWNER/GUARANTOR:**

| FOR THE OWNER/GUARANTOR #1 (PRINT NAME BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS OWNER/GUARANTOR |
|---|---|---|
| Justin Lane Johnson | | |
| FOR THE OWNER/GUARANTOR #2 (PRINT NAME BELOW) | SIGNATURE (SIGN BELOW) | MUST SIGN AS OWNER/GUARANTOR |
| | | |

***Purchaser's payment of the Purchase Price shall be deemed Purchaser's acceptance and performance of this Agreement, notwithstanding Purchaser not executing this agreement.***

Each of above-signed Seller(s) and Owner(s) represent that he or she is authorized to sign this Agreement individually and on behalf of Seller and that the information provided herein and in all documents, forms and recorded interviews provided to or with Purchaser is true, accurate and complete in all respects. Seller and each of the above-signed Owners authorize Purchaser, its agents and representatives and any credit reporting agency engaged by Purchaser, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, and (ii) obtain credit reports, including consumer credit reports at any time now or for so long as Seller and/or Owners(s) continue to have any obligation owed to Purchaser as a consequence of this Agreement or for Purchaser's ability to determine Seller's eligibility to enter into any future agreement with Purchaser.

2

Initial Here _____
_____

## AGREEMENT FOR DIRECT DEPOSITS (ACH CREDITS)
## AND DIRECT COLLECTIONS (ACH DEBITS)

**DEFINITIONS:**
**Purchaser: EBF Partners, LLC d/b/a Everest Business Funding D/B/A EBF**
**Seller: J&J E-LITE ENTERPRISES, LLC**

**Designated Bank Account:**   J&J E-LITE ENTERPRISES, LLC

_____

(Name of account exactly as it appears on your Bank Statements or Bank Letters)

Bank Name: _____ Branch: _____ Tax ID: 85-1908746

ABA: Routing: _____ DDA: Account No: _____

**Additional Alternate Bank Account(s), if any, are listed on the attached Appendix "A"**

**Purchase and Sale Agreement:** Payment Rights Purchase and Sale Agreement between Seller and Purchaser, dated as of 11/30/2020

**NACHA RULES:** The Rules and Operating Guidelines of NACHA – The Electronic Payments Association

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Purchase and Sale Agreement.

**This Agreement for Direct Deposits (ACH Credits) and Direct Collections (ACH Debits) is part of (and incorporated by reference into) the Payment Rights Purchase and Sale Agreement. Seller should keep a copy of this important legal document for Seller's records.**

**DISBURSEMENT OF PURCHASE PRICE.** By signing below, Seller authorizes Purchaser, after electing to purchase the Purchased Amount, to disburse the Purchase Price (less any applicable fees) set forth in the Payment Rights Purchase and Sale Agreement, or to disburse other amounts due to Seller under the Payment Rights Purchase and Sale Agreement, by initiating an ACH credit to the Designated Bank Account.

**COLLECTION OF FUNDS ARISING FROM FUTURE RECEIPTS.** By signing below, Seller authorizes Purchaser to collect amounts Purchaser is entitled to receive under the Payment Rights Purchase and Sale Agreement by initiating ACH debits to the Designated Bank Account, as follows:

For the amount of $187.50 (or) Percentage of each banking deposit: 70 %

On the following Days: Each business day. On the business day immediately following any business day(s) on which Seller's bank was not open or was not able to process ACH transactions, the Purchaser will debit the Designated Bank Account for an amount equal to the sum of (i) the Daily Payment amount due on that business day, plus (ii) the Daily Payment amount(s) due on the preceding business day(s) when the Bank was not open or could not process ACH transactions.

If an ACH debit from the Designated Bank Account is rejected by Seller's financial institution for any reason other than termination (as further defined in this agreement), Seller authorizes Purchaser to initiate an additional ACH debit to the Alternate Bank Account(s) to collect the amounts due to Purchaser.

ISO#4432/AR#1201857/11302020



## Bank Login Information

Dear Merchant,

Thank you for accepting this offer from EBF Partners, LLC d/b/a Everest Business Funding. We look forward to being your funding partner for as long as you need.

## Daily ACH Program:

EBF Partners, LLC d/b/a Everest Business Funding will require viewing access to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

EBF Partners, LLC d/b/a Everest Business Funding will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

\* Be sure to indicate capital or lower case letters.

Name of Bank:

Bank portal website:

Username:

Password:

Security Question / Answer 1:

Security Question / Answer 2:

Security Question / Answer 3:

Any other information necessary to access your account:


Merchant / Owner Signature                                          Date

ISO#4432/AR#1201857/11302020

# Exhibit A



# AAAAUEL7PK                    AAAAUEL7PK

## Cover Page for Faxing Documents to your DocuSign Envelope

1. Write the number of pages on the line below.
2. Fax the document and cover page to the appropriate number below:

| | |
|---|---|
| U.S. and Canada: | +1 888 258 5388, +1 206 452 7455 |
| London: | +44 330 822 0429 |
| Singapore: | +65 3158 6882 |
| Australia: | +61 280 155 634 |

| | |
|---|---|
| From: | JUSTIN LANE JOHNSON |
| Envelope Subject: | .Please sign Contract for J&J E-LITE ENTERPRISES, LLC - 11/30/2020 - ISO: MEG CONSULTING INC |
| Attachments to Fax: | |
| Envelope ID: | e5535be2-6023-43d4-a1cb-58b8d12416d7 |
| Sender Account Name: | Everest Business Funding |
| Number of Pages: (Including cover page) | _____ |

DocuSign Customer Support: https://support.docusign.com

Note:
Fax transmissions take approximately one minute per page faxed.
This page may only be used once. If you would like to fax again, you must print a new cover page.

# AAAAUEL7PK                    AAAAUEL7PK



## PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT

This Payment Rights Purchase and Sale Agreement ("Agreement") dated 11/30/2020, is made by and between EBF Partners, LLC d/b/a Everest Business Funding ("Purchaser"), the business identified below ("Seller"), and the owners of the Seller identified below (each a "Guarantor").

### SELLER'S INFORMATION

| Legal Business Name | J&J E-LITE ENTERPRISES, LLC | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **D/B/A** | | | | | | | | | |
| **Type of Business Entity** | **Corp.** | | **Limited Liability Company** | ✔ | **Partnership** | | **Limited Partnership** | | |
| | **Limited Liability Partnership** | | | | **Sole Proprietorship** | | **Other** | | |
| **Physical Address** | 1320 MONTICELLO DR | | | | | | | | |
| **City** | BURLESON | | **State** | | TX | | **Zip** | | 76028 |
| **Mailing Address** | 1320 MONTICELLO DR | | | | | | | | |
| **City** | BURLESON | | **State** | | TX | | **Zip** | | 76028 |
| **Contact Name** | JUSTIN LANE JOHNSON | | | | | | **Position** | | |
| **Business Phone** | | | | | **Cell Phone** | | | | |
| **Email** | jjohnson.eliteenterprises@gmail.com | | | | **Website** | | | | |
| **Date Business Started** | 07/2018 | | | | **Federal Tax Id** | | 85-1908746 | | |
| **Monthly Avg Sales** | $6,273.50 | | | | **Annual Sales** | | $75,282.00 | | |

### GUARANTOR'S INFORMATION

| Name: justin lane johnson | Address: 1320 MONTICELLO DR, BURLESON, Texas 76028 |
|---|---|
| Name: | Address: |

### OFFER TO SELL AND PURCHASE PAYMENT RIGHTS

Seller hereby sells, assigns and transfers to Purchaser, without recourse, upon payment of the Purchase Price, the Purchased Amount of Future Receipts by delivering to Purchaser the Specified Percentage of the proceeds of each future sale by Seller. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Credit Card") or other form of monetary payment in the ordinary course of Seller's business. BASED UPON SELLER'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, SELLER IS CONFIDENT THAT THE PURCHASE PRICE PAID BY PURCHASER IN EXCHANGE FOR THE PURCHASED AMOUNT OF FUTURE RECEIPTS WILL BE USED IN A MANNER THAT WILL BENEFIT SELLER'S CURRENT AND FUTURE BUSINESS OPERATIONS.

| Purchase Price | $11,000.00 | Purchased Amount | $16,500.00 | Daily Payment | $187.50 | Specified Percentage | 70 % |
|---|---|---|---|---|---|---|---|
| Daily Payment = (Monthly Average Sales X Specified Percentage ) / Average Weekdays in a Calendar Month | | | | | | | |

| Itemization of Fees Deducted from Purchase Price | | Amount Remitted to Seller: |
|---|---|---|
| Origination Fee:<br>Funding Fee:<br>ACH/Lockbox/CC Split Processing Fee:<br>Payoff Existing Balance | $400.00<br>$50.00<br>$275.00<br>$0.00 | **$10,275.00**<br><br>The Amount Remitted to Seller may include payments made on Seller's behalf to satisfy prior obligations of Seller to EBF Partners, LLC d/b/a Everest Business Funding or third parties. |
| Total: | ($725.00) | |

1

Seller shall (1) deposit all Future Receipts into only one bank account, which must be acceptable to and pre-approved by Purchaser (the "Account") and (2) instruct Seller's Credit Card processor, which processor must be acceptable to and pre-approved by Purchaser (the "Processor") who shall serve as Seller's sole Credit Card processor, to deposit all Credit Card receipts of Seller into the Account. Purchaser will debit the Daily Payment from the Account each Weekday (Monday – Friday). Seller authorizes Purchaser to initiate electronic checks or ACH debits from the Account equal to the Daily Payment each business day and will provide Purchaser with all required account information. Seller will be responsible for any fees incurred by Purchaser resulting from a rejected electronic check or ACH debit attempt. Purchaser is not responsible for any overdrafts or rejected transactions that may result from Purchaser's debiting any amount authorized under the terms of this Agreement.

**Purchaser Acknowledgement.** There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Purchaser. Seller going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. Purchaser is entering into this Agreement knowing the risks that Seller's business may slow down or fail, and Purchaser assumes these risks based on Seller's representations warranties and covenants in this Agreement, which are designed to give Purchaser a reasonable and fair opportunity to receive the benefit of its bargain.

**Seller's Right to Reconciliation.** The Daily Payment amount is intended to represent the Specified Percentage of Seller's Future Receipts. Seller may request that Purchaser reconcile Seller's actual receipts by either crediting or debiting the difference back to or from the Account so that the amount Purchaser debited in the most recent calendar month equaled the Specified Percentage of Future Receipts that Seller collected in that calendar month. Any reconciliation request must be: (1) in writing; (2) include a copy of Seller's bank statement for the calendar month at issue; and (3) be sent to Everest Business Funding at 5 West 37th Street, Suite 1100, New York NY 10018 within 30 days after the last day of the calendar month at issue. It is solely the Seller's responsibility to send a complete bank statement. Failure to send a written reconciliation request within 30 days after the last day of the calendar month at issue forfeits that month's reconciliation.

**Fees.** A list of all fees applicable under this Agreement is contained in Appendix A.

**THE "PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT TERMS AND CONDITIONS" AND THE "PERFORMANCE GUARANTY" ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT.**

**SELLER:**    J&J E-LITE ENTERPRISES, LLC

| BY: | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS SELLER |
|---|---|---|---|---|
| Justin Lane Johnson | | | | ← |
| BY: | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS SELLER |
| | | | | ← |

**OWNER/GUARANTOR:**

| FOR THE OWNER/GUARANTOR #1 | (PRINT NAME BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER/GUARANTOR |
|---|---|---|---|---|
| Justin Lane Johnson | | | | ← |
| FOR THE OWNER/GUARANTOR #2 | (PRINT NAME BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER/GUARANTOR |
| | | | | ← |

***Purchaser's payment of the Purchase Price shall be deemed Purchaser's acceptance and performance of this Agreement, notwithstanding Purchaser not executing this agreement.***

Each of above-signed Seller(s) and Owner(s) represent that he or she is authorized to sign this Agreement individually and on behalf of Seller and that the information provided herein and in all documents, forms and recorded interviews provided to or with Purchaser is true, accurate and complete in all respects. Seller and each of the above-signed Owners authorize Purchaser, its agents and representatives and any credit reporting agency engaged by Purchaser, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, and (ii) obtain credit reports, including consumer credit reports at any time now or for so long as Seller and/or Owners(s) continue to have any obligation owed to Purchaser as a consequence of this Agreement or for Purchaser's ability to determine Seller's eligibility to enter into any future agreement with Purchaser.

HC# 4822-9598-3643

ISO#4432/AR#1201857/11302020

V-4.0

Initial Here _____

## AGREEMENT FOR DIRECT DEPOSITS (ACH CREDITS)
## AND DIRECT COLLECTIONS (ACH DEBITS)

**DEFINITIONS:**
**Purchaser: EBF Partners, LLC d/b/a Everest Business Funding D/B/A EBF**
**Seller: J&J E-LITE ENTERPRISES, LLC**

**Designated Bank Account:**     J&J E-LITE ENTERPRISES, LLC

_____

(Name of account exactly as it appears on your Bank Statements or Bank Letters)

Bank Name: _____ Branch: _____ Tax ID: 85-1908746

ABA: Routing: _____ DDA: Account No: _____

**Additional Alternate Bank Account(s), if any, are listed on the attached Appendix "A"**

**Purchase and Sale Agreement:** Payment Rights Purchase and Sale Agreement between Seller and Purchaser, dated as of 11/30/2020

**NACHA RULES:**The Rules and Operating Guidelines of NACHA – The Electronic Payments Association

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Purchase and Sale Agreement.

**This Agreement for Direct Deposits (ACH Credits) and Direct Collections (ACH Debits) is part of (and incorporated by reference into) the Payment Rights Purchase and Sale Agreement. Seller should keep a copy of this important legal document for Seller's records.**

**DISBURSEMENT OF PURCHASE PRICE.** By signing below, Seller authorizes Purchaser, after electing to purchase the Purchased Amount, to disburse the Purchase Price (less any applicable fees) set forth in the Payment Rights Purchase and Sale Agreement, or to disburse other amounts due to Seller under the Payment Rights Purchase and Sale Agreement, by initiating an ACH credit to the Designated Bank Account.

**COLLECTION OF FUNDS ARISING FROM FUTURE RECEIPTS.** By signing below, Seller authorizes Purchaser to collect amounts Purchaser is entitled to receive under the Payment Rights Purchase and Sale Agreement by initiating ACH debits to the Designated Bank Account, as follows:

For the amount of $187.50 (or) Percentage of each banking deposit: 70 %

On the following Days: Each business day. On the business day immediately following any business day(s) on which Seller's bank was not open or was not able to process ACH transactions, the Purchaser will debit the Designated Bank Account for an amount equal to the sum of (i) the Daily Payment amount due on that business day, plus (ii) the Daily Payment amount(s) due on the preceding business day(s) when the Bank was not open or could not process ACH transactions.

If an ACH debit from the Designated Bank Account is rejected by Seller's financial institution for any reason other than termination (as further defined in this agreement), Seller authorizes Purchaser to initiate an additional ACH debit to the Alternate Bank Account(s) to collect the amounts due to Purchaser.



## Bank Login Information

Dear Merchant,

Thank you for accepting this offer from EBF Partners, LLC d/b/a Everest Business Funding. We look forward to being your funding partner for as long as you need.

## Daily ACH Program:

EBF Partners, LLC d/b/a Everest Business Funding will require viewing access to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

EBF Partners, LLC d/b/a Everest Business Funding will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower case letters.

Name of Bank: _____

Bank portal website: _____

Username: _____

Password: _____

Security Question / Answer 1: _____

Security Question / Answer 2: _____

Security Question / Answer 3: _____

Any other information necessary to access your account:

_____

_____         _____

Merchant / Owner Signature                      Date